### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TROY BARBOUR**                                        **CIVIL ACTION**

**VERSUS**                                              **NO.  13-6207**

**WARDEN HOWARD PRINCE**                                **SECTION "H"(5)**

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.[1]

### I.  Procedural History

Petitioner, Troy Barbour, is a state prisoner incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.  He was convicted by a jury of one count of attempted second-degree murder on June 17, 2008.[2]  On April 1, 2009, the trial court denied petitioner's post-

---

[1]  As noted by petitioner (Rec. Doc. 18), in accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Seth Smith as Respondent because he is petitioner's current custodian.

[2]  State Rec., Vol. 5 of 8, minute entry dated June 17, 2008.

verdict motions and sentenced Barbour to forty-eight years and six months imprisonment at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served.[3]

Barbour timely appealed.  The Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence on March 24, 2010.[4]  The Louisiana Supreme Court denied his application for writ of certiorari on November 19, 2010.[5]  The United States Supreme Court denied his petition for a writ of certiorari on February 22, 2011.[6]

On or about October 11, 2012, petitioner filed an application for post-conviction relief with the state district court.[7]  The district court denied the application on October 29, 2012.[8]

---

[3]  *Id.*, minute entry dated April 1, 2009; *see also* State Rec., Vol. 6 of 8, Transcript of sentencing held April 1, 2009, pp. 4-8.  Although the State filed a multiple bill of information, State Rec., Vol. 1 of 8, it does not appear that Barbour was ever adjudicated as a multiple offender.  The state court record contains no transcript or minute entry reflecting that a multiple offender hearing or adjudication was ever held.  The last minute entry dated June 8, 2009 reflects that the hearing was simply continued without date.

[4]  *State v. Barbour*, 2009-KA-1258 (La. App. 4th Cir. 3/24/10), 35 So.3d 1142; State Rec., Vol. 6 of 8.

[5]  *State v. Barbour*, 2010-K-0934 (La. 11/19/10), 49 So.3d 396; State Rec., Vol. 6 of 8.

[6]  *Barbour v. Louisiana*, 131 S.Ct. 1477 (2/22/11); State Rec., Vol. 6 of 8 (copy of letter from the United States Supreme Court, 2/22/11).

[7]  State Rec., Vol. 2 of 8, Uniform Application for Post-Conviction Relief, signed by petitioner on October 11, 2012. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). If that date cannot be gleaned from

2

On December 13, 2012, the Louisiana Fourth Circuit denied relief on petitioner's related supervisory writ application, finding no error in the judgment of the district court.[9]   The Louisiana Supreme Court denied his related writ application on August 30, 2013.[10]

On or about September 26, 2013, Barbour filed the instant federal application seeking *habeas corpus* relief.[11]   Petitioner asserts four claims for relief: trial court error in denying his motion for a mistrial based on perjured and improper other crimes evidence; insufficiency of the evidence; ineffective assistance of trial and appellate counsel; and denial of his ability to cross-examine and confront his accuser at trial based on the trial court's failure to fingerprint the victim.

---

the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

[8]   *Id.*, State district court judgment denying post-conviction relief signed October 29, 2012.

[9]   State Rec., Vol. 8 of 8, *State v. Barbour*, 2012-K-1625 (La. App. 4th Cir. 12/13/12).

[10]   *State ex rel. Troy Barbour v. State*, 2013-KH-0568, 120 So.3d 262 (La. 8/30/13); copy at State Rec., Vol. 8 of 8.

[11]   Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n. 2 (5th Cir.2003). The Court will use the earliest date appearing on petitioner's application, September 26, 2013, which is the date used by the State and on which petitioner states he placed his petition in the prison mailing system.

The State argues that Barbour's petition is untimely.  For the following reasons, the Court agrees and finds the petition to be untimely.

## II. Analysis

*A.    Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs the filing date for this action because petitioner filed his *habeas* petition after the AEDPA's effective date.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The AEDPA includes a one-year period of limitations for *habeas* petitions brought by prisoners challenging state court judgments.  Title 28 U.S.C. § 2244(d) provides, in pertinent part:

> (1)    A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*(1)    Finality of conviction*

Under Section 2244(d)(1)(A), the one-year period commences to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of the time for seeking such review.  *See* 28 U.S.C. § 2244(d)(1)(A) (West 2013), as amended by the AEDPA, P.L. 104–132, 110 Stat. 1220; *see also Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999).  In this case, Barbour's conviction became final, for federal limitations purposes, on February 22, 2011, when the United States Supreme Court denied his application for a writ of certiorari.  *Giesberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002)); *Manning v. Epps*, 688 F.3d 177, 182 (5th Cir. 2012).  Under a plain reading of the statute, Barbour then had one year within which to file his federal *habeas* petition, or a deadline of February 22, 2012.  Barbour did not file his federal *habeas* petition with this Court until September 26, 2013. Thus, his challenge to his 2008 conviction must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2).

The statutory tolling provision under Section 2244(d)(2) provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  As petitioner concedes, he had no such applications

pending before the state courts during the relevant one-year time period.[12]  Petitioner admits his federal application was not filed within one year from the date his conviction and sentence became final.[13]

Nonetheless, petitioner invokes alternative statutory provisions that offer later start dates for the period of limitations to argue that his petition should be deemed timely filed. Petitioner urges the Court to apply Section 2244(d)(1)(B) because a state-created impediment prevented him from filing timely.  He also argues that Section 2244(d)(1)(D) applies because he only subsequently learned the factual predicate for some of his claims.  Finally, he contends he is entitled to review of his federal petition based on his "actual innocence."

*(2)     State-created impediment*

Barbour concedes he knew that under the AEDPA he had until February 22, 2012 to file his federal *habeas* application.  However, petitioner alleges the following circumstances undermined his ability to file his state post-conviction application timely so as to toll the one-year federal statute of limitations.  He claims that due to his indigency, he had difficulty

---

[12]   The Court notes that petitioner's first post-conviction relief application in the state courts was filed on October 11, 2012.  This application was filed *after* the expiration of the federal statute of limitations.  It therefore had no bearing on the timeliness of his federal application*. See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir.2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir.2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler v. Cain*, 533 F.3d 314, 318 (5th Cir. 2008).

[13]   Rec. Doc. No. 1, p. 20.

acquiring legal services after his direct appeal.  When he complained about the "ineffective legal counselor's program" at the prison, Warden Tillman retaliated against him on November 21, 2011.  On this date, the record shows that petitioner was placed on lockdown in a working cell block for a Rule 1 (contraband) violation.  During this time, according to petitioner, he "tried countless times to obtain access to the law library and legal supplies such as paper, carbon paper, envelopes, applications and case laws."[14] He asserts that in January 2011, he spoke to Warden Tillman about his legal problems and difficulties obtaining the necessary materials, and the warden told him his post-conviction application would be filed on time.  He admits he received legal help from fellow inmates.  By the second week of February 2012, however, his legal work was returned to him unfinished.  Tillman sent another inmate to assist petitioner, but then "fired" him a few days later, leaving no one to work on petitioner's post-conviction application.

On July 13, 2012, he was placed in administrative segregation and isolation for two rule violations.  He claims that he was under extreme duress during this time and wrote a complaint to the United States District Court for the Middle District of Louisiana about his circumstances on or about July 24, 2012.   He was then moved to extended lockdown.  He claims he was not was able to file a post-conviction application until October 13, 2012.

Barbour contends a state-created impediment existed specifically between November

---

[14]  *Id*. at 22.

21, 2011 and February 22, 2012.  He argues that the denial of access to the law library, difficulty acquiring legal supplies and inadequate legal assistance denied him access to the courts, and created an impediment to his ability to pursue state post-conviction relief that prevented him from timely filing his federal petition.  *See* 28 U.S.C. §2244(d)(1)(B); *Critchley v. Thaler*, 586 F.3d 318, 320–21 (5th Cir.2009).

Section 2244(d)(1)(B) allows a petitioner to "file a habeas corpus petition within one year from 'the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.' "  To establish a state-created impediment, "the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir.2003); *see also Wickware v. Thaler*, 404 F. Appx. 856, 862 (5th Cir. 2010) (noting the burden of proof is "steep" and petitioner "can therefore only prevail in applying § 2244(d)(1)(B) by showing that the state's actions were so egregious as to constitute a violation of the United States Constitution").  Stated simply, Barbour must show that the circumstances alleged actually prevented him from filing in violation of the Constitution or federal law. *Egerton*, 334 F.3d at 436–37; *see also Krause v. Thaler*, 637 F.3d 558, 561 (5th Cir. 2011) (holding that a petitioner "must also show that the [impediment] actually *prevented* him from timely filing his habeas petition") (emphasis in original).  Whether a state-created impediment prevented a petitioner from filing a *habeas* petition under Section 2244(d)(1)(B) is a fact-intensive inquiry.

8

*See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n. 6, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (Section 2244(d)(1)(B) requires claim-by-claim consideration); *Egerton*, 334 F.3d at 438 (citing *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc)).

Regarding the right of access, the United States Fifth Circuit Court of Appeals recently explained:

> "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir.1993) (footnote omitted). This right prohibits state prison officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

*Manning v. Sumlin*, 540 F. App'x 462 (5th Cir. 2013). Furthermore, to prevail on such a claim, petitioner cannot simply allege that the legal assistance was inadequate. The Supreme Court has cautioned that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense .... [T]he inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program *hindered* his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasis added) (noting that there is no "abstract, freestanding right to a law library or legal assistance"); *see also Krause v. Thaler, supra.* As examples, the Supreme Court noted a petitioner might show "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or

that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

The Court finds that petitioner has not made the requisite showing, based on his allegations with regard to the inadequacy of the materials and assistance provided him, to justify statutory tolling as a state-created impediment under § 2244(d)(1)(B). In this case, petitioner's allegations are insufficient to show that the legal assistance and materials provided by the state correctional facility prevented him from timely filing his post-conviction application. Barbour claims he could not "access the law library and legal supplies such as paper, carbon paper, envelopes, applications and case laws so [he] could learn how to write a proper motion."[15] However, his attached exhibits reflect that his complaint in this regard was fully investigated and found to be without merit.[16] The evidence further shows that he not only had the ability to request these materials through the legal services program, but that he had many of these materials in his possession for months. Far from impeding his efforts, petitioner's allegations and exhibits plainly show that officials assisted him in his efforts to complete his application. Moreover, the unrefuted evidence shows that inmate counsel provided petitioner assistance by instructing him on the time frame for filing his

---

[15]   Rec. Doc. 1, pp. 22-23.

[16]   Rec. Doc. 1, p. 31 (First Step Response Form, 2012-191).

post-conviction relief, and supplying him with the post-conviction applications and legal research on the issues petitioner sought to raise on post-conviction.  Petitioner admitted he had possession of these materials by the second week of February 2012, *before* the one-year deadline had expired.[17]  He knew the application had not been filed and could have done so; nothing impeded him from preparing it himself.  Instead, petitioner chose to continue his efforts to seek legal help and rely on other inmates.  Finally, petitioner does not claim that the State impeded his efforts in any manner during the initial nine months of the one-year federal limitations period.

On the evidence presented, it is clear that petitioner was hardly stymied in his efforts to file his post-conviction relief application.  Barbour has failed to set forth credible evidence that Elayn Hunt correctional employees and officials prevented him from preparing and filing his post-conviction application by February 22, 2012.  He has not shown the existence of a state-created impediment to prevent the timely filing of the instant federal petition.  For these reasons, the Court finds Section 2244 (d)(1)(B) inapplicable.

(3)  *Discovery of factual predicate as basis for denial of mistrial and ineffectiveness of counsel claims*

Barbour also claims that tolling should apply because he was unable to discover through the exercise of due diligence the factual predicate supporting his improper denial of

---

[17]  Rec. Doc. No. 1, pp. 99-100. Although petitioner claims his legal work was unfinished, he admits it was returned to him by inmate counsel by the second week of February.

11

mistrial and ineffective assistance of counsel claims until after his conviction became final. Under 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date. For the following reasons, however, the Court finds Barbour has failed to establish that the statute of limitations commenced at a later date pursuant to this provision.

Petitioner's argument is predicated on the following events. During direct examination, the State's witness (the victim) testified that petitioner on two occasions had swung a hatchet at him before the offense at issue.   The defense moved for a mistrial arguing that the State elicited evidence of other prior bad acts by the petitioner without proper notice to the defense.[18]   The trial court denied the defense's motion for a mistrial on grounds that the defense had been on notice of the prior incident because it was referenced in the police report disclosed by the State in advance of trial.   The court admonished the jury to disregard the testimony.

Petitioner contends the information contained in the police report establishes that the victim's testimony about the prior hatchet incidents was false.  Furthermore, he argues it did not provide the requisite notice to the defense of the other incidents.  According to petitioner, this further supports his claim that the trial court erred in denying his motion for a mistrial

---

[18]   State Rec., Vol. 6 of 8, Trial Transcript, pp. 27-37.

based on the introduction of perjured testimony about other crimes, and his claim that trial and appellate counsel should have been aware of this evidence of perjury.

The Court rejects petitioner's argument that the factual predicate of his claims could not have been discovered through due diligence by the February 22, 2012 deadline. Section 2244(d)(1)(D) establishes an objective, rather than subjective, test. *Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir.2007) (*citing Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir.2000)); *accord Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir.2008). In other words, subparagraph (D) turns upon what a defendant fairly could have known, not what he actually did or did not know. *Wood*, 487 F.3d at 5. In this case, the factual predicate underlying his claims would have been known to petitioner at the time of trial. He heard the victim's testimony at trial and was unquestionably aware of the basis for the defense's objection and the trial court's ruling as to the contents of the police report.[19]  Thus, the claims at issue are based on facts that would have been known to Barbour at the time of trial. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim").  Nor would a later understanding of the legal significance of those facts delay the start of the period of limitation. *See Klein v. Franklin*, 437 F. App'x 681, 684 (10th Cir.2011) (The "limitations period begins to run when the petitioner knows of the facts giving

---

[19] Furthermore, in his traverse, petitioner acknowledges he received a copy of his trial transcripts in late February or early March 2011.

rise to the habeas claim; it is not required that he or she understand the legal significance of those facts.").

It is notable that petitioner does not assert the manner in which he purportedly learned the factual basis for the claims or when he learned it. His insufficient allegations alone provide a basis for the Court to reject his invocation of Section 2244(d)(1)(D). Presumably, as the State argues, his contention is based on the contents of the police report. Given petitioner's knowledge at the time of trial, he certainly could have attempted to obtain a copy of the report. Although petitioner's attempts, if any, in this regard are unclear, there is nothing to suggest that he was unable to discover the police report through the exercise of due diligence at the time of his conviction or at any point thereafter prior to February 2012. Petitioner has failed to show that Section 2244(d)(1)(D) applies in this case.

B.    *Equitable tolling*

The Court also considers equitable tolling based on Barbour's allegations that he was placed on extended lockdown and denied access to the law library, had difficulty acquiring legal supplies and had to rely on inadequate legal assistance from fellow inmates. Barbour's claim to equitable tolling fails because he has not shown that he diligently pursued his rights or that an extraordinary circumstance hampered his ability to file his petition within the one-year federal limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *Alexander v. Cockrell*, 294 F.3d 626, 629 (petitioner bears the burden of proof to establish entitlement to equitable tolling). Generally, equitable tolling applies

14

where a petitioner was actively misled by the state or his counsel about his petition or when some extraordinary obstacle prevents him from asserting his rights. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir.2002) (citing *Rashidi v. Am President Lines*, 96 F.3d 124, 128 (5th Cir.1996). "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quoting *Alexander v. Cockrell*, 294 F.3d at 629).

First, Barbour has not alleged, much less proven, sufficiently rare and exceptional circumstances that would justify applying equitable tolling. Neither the restrictions imposed while on lockdown nor reliance on legal assistance from fellow inmates constitute extraordinary circumstances. *See Tate v. Parker*, 439 F. App'x 375 (5th Cir. 2011) ("The alleged extraordinary circumstances endured by Tate, such as ignorance of the law, lack of knowledge of filing deadlines, a claim of actual innocence, temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not sufficient to warrant equitable tolling.") (citing *Felder v. Johnson*, 204 F.3d 168, 171–72 (5th Cir.2000) and *Scott v. Johnson*, 227 F.3d 260, 263 & n. 3 (5th Cir.2000)); *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir.2009) (petitioner not entitled to equitable tolling for time in administrative segregation with limited access to law library); *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir.), *cert. denied*, 543 U.S. 999 (2004) ("lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate"); *Hilbert v. Beard*, No. 14-919, 2014 WL 4702305, at *8 (C.D. Cal. Sept.

15

19, 2014) (reliance on the assistance of another inmate for legal help is not an extraordinary circumstance); *Manning v. Sumlin*, 540 F. App'x 462 (5th Cir. 2013) (no extraordinary circumstances shown based on allegation that the assistance petitioner received from his State-provided inmate writ writers was inadequate).

Second, even if petitioner could show rare and extraordinary circumstances justifying some equitable tolling of the limitations period, he must also demonstrate that he has diligently pursued his claims, which he fails here to do. Petitioner has not established that he was diligently pursuing his rights during the one-year federal statute of limitations.  Although temporarily assigned to administrative segregation and a working cell block, Barbour was in general custody with access to the law library and legal materials for approximately nine months of the one-year federal limitations period. He failed to file a state petition in the nine months after his conviction became final on February 22, 2011 and before he was placed in administrative segregation on November 21, 2011.  Barbour does not allege that he was ever denied access to the library in the nine months before he was placed on lockdown.  There is no evidence that he ever requested library access during these months.  Instead, he claims he wanted to obtain legal assistance.  Despite receiving legal assistance, he offers no explanation for why he was unable to complete and file his application before the limitations period expired on February 22, 2012, particularly after it was partially completed by inmate counsel, and he was in possession of his legal materials by the second week of February 2012.  This conduct demonstrates a lack of diligence on petitioner's part.  Equitable tolling is not

16

warranted under the circumstances. *See Tsolainos v. Cain*, 540 F. App'x 394, 397 (5th Cir. 2013) (citing *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ([E]quitable tolling "is not intended for those who sleep on their rights.")).

C.    *Miscarriage of justice/actual innocence*

Finally, Barbour alleges his actual innocence to overcome his filing delay. In *McQuiggin v. Perkins*, ––– U.S. ––––, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the Supreme Court held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations.   *Id.* at 1928. To be credible, however, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. at 329.

In this case, petitioner has made no credible claim of actual innocence.  In his traverse, petitioner asserts two newly discovered grounds to support his actual innocence theory. The first ground involves a fingerprint motion by which he sought to challenge the true identity of the victim.  Petitioner believed the victim may have been using a false name.  Although the

17

motion was granted, petitioner learned it was never carried out.  Had the challenge to his identity proved successful, petitioner argues the jury would not have convicted him.  The second ground involves police detective Jeffrey Lehrmann, who took the victim's statement a few days after the incident.  Petitioner learned from news reports that the detective was subsequently implicated in wrongdoing and deceit in an unrelated criminal matter.  Petitioner contends the jury would have discredited the detective's testimony in his case had this evidence been revealed.  Petitioner's alleged newly discovered evidence goes to the credibility of the witnesses' testimony and legal insufficiency, not factual innocence.  He offers nothing, and the record discloses no such evidence, to show he is actually innocent of the crime.

In sum, the instant petition was filed after the federal limitations period expired. Barbour has failed to demonstrate that tolling principles render his petition timely, or that he is entitled to review of his claims through the "actual innocence" gateway. Therefore, his federal habeas petition should be dismissed with prejudice as untimely.

### **RECOMMENDATION**

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE** as untimely.

**IT IS FURTHER ORDERED** that the **CLERK** shall substitute Warden Seth Smith as respondent in this matter in place of Howard Prince.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

18

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[20]

New Orleans, Louisiana, this 30th day of ___October___, 2014.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.